IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DISTEFANO, INCORPORATED,** *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil Case No.: SAG-22-01493 |
| **TASTY BAKING COMPANY,** | * |
| Defendant. | * |

## MEMORANDUM OPINION

Plaintiffs DiStefano, Incorporated ("DI") and Dwayne DiStefano (collectively, "Plaintiffs") filed this action against Defendant Tasty Baking Company ("Tasty") for claims arising out of Tasty's termination of Plaintiffs' distributor agreement. Discovery has now concluded and Tasty has filed a motion for summary judgment. ECF 67. This Court has reviewed the motion, the opposition filed by Plaintiffs, ECF 70, and Tasty's reply, ECF 74. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated herein, Tasty's motion must be granted.

I. **FACTUAL BACKGROUND**

The facts described herein are viewed in the light most favorable to Plaintiffs as the non-moving party.

Tasty is a large manufacturer of prepackaged baked goods. ECF 70-1 at 1. To distribute its goods to retailers and consumers, Tasty uses a "direct-store-delivery system." ECF 67-11 ¶ 5. That is, distributor franchises like DI acquire rights from Tasty to distribute Tasty's products within a particular region, sometimes called a route. *Id.* Distributors can purchase their rights directly from Tasty or from an existing distributor. *Id.* ¶ 6. When a distributor purchases its rights directly from

Tasty, it enters into a Distribution Agreement with Tasty; when a distributor purchases its rights from an existing distributor, it assumes that other distributor's Distribution Agreement. *Id.* Despite the frequent use of the term "distributor," Tasty's distributors are franchisees. ECF 70-2 ¶ 3; ECF 67-11 ¶ 5. When a distributor purchases Distribution Rights from Tasty, it is purchasing a franchise. ECF 70-2 ¶ 3. Tasty has sold franchises in Maryland with little interruption since 2003, although its registration to sell franchises has lapsed periodically. *See id.* ¶¶ 3–4.

DI, a corporation solely owned by Dwayne DiStefano, is a former distributor of Tasty products. ECF 70-1 at 1. DI first purchased distribution rights from Tasty in 2004 when it entered into a Distribution Agreement. *Id.* Plaintiffs acquired an additional route from a third party on June 18, 2017, and assumed the 2009 Distribution Agreement between Tasty and that third Party. ECF 70-5. That 2009 Agreement, the last between the parties, governs in this case. *See* ECF 70-8 (recognizing 2009 Distributor Agreement as governing, and providing minimal amendments); *see also, e.g.*, ECF 70-16 (referring to Distributor Agreement dated April 5, 2009, and assumed June 18, 2017).

1. The Terms of the Agreement

The Agreement laid out the rights and obligations of the parties. Article 3 required the distributor to use "best efforts to develop the market for, and maximize the sale of," Tasty's products. ECF 70-5 § 3.1. Specifically, DI was obligated, *inter alia*, "to maintain an adequate and fresh supply of all Products in all Outlets in [its] Sales Territory, … to remove promptly all damaged or Overcode[1] Products from the Outlets in the Sales Territory, … and to maintain proper service and delivery to all Outlets in the Sales Territory …." *Id.* DI also agreed to refrain from

---

[1] "Overcode" and "out of code" refer to expired products.

2

distributing competing snacks or baked goods. *Id.* § 3.5. Important here, section 3.6 of the Agreement provided that "Failure to carry out the conditions listed in this Article 3 shall be considered a material breach of this Agreement and shall entitle TASTY to terminate this Agreement …." *Id.* § 3.6. Article 5 required Tasty to "use best efforts to manufacture and deliver … sufficient quantities of products to fill DISTRIBUTOR's orders in a reasonable and timely fashion, … and to assist and cooperate with DISTRIBUTOR in its sales efforts." *Id.* § 5.1. The same article stated that "[i]n the event of any job action, shortages …, failure of machinery or equipment, … or any circumstance beyond the control of TASTY, TASTY shall be responsible for filling orders or otherwise performing its obligations under this Agreement only to the extent and on such a basis as circumstances then reasonably permit." *Id.*

Article 10 outlined the reasons for which either party could terminate the Agreement and the procedures for terminating the Agreement. In the event of "curable" breaches of the distributor's obligations, Tasty was required to give written notice of the breach, and only authorized to terminate the Agreement if that breach was not cured within ten days. *Id.* § 10.4. More than two notices within a twelve-month period constituted a non-curable breach because of "substantial harm to TASTY's business." *Id.* Tasty was entitled to terminate the Agreement with 24 hours written notice in the event of a non-curable breach. *Id.* § 10.2.

After termination for any reason, Tasty was obligated to "use reasonable efforts, recognizing the limited personnel TASTY has for such purpose, to operate the Distribution Rights for the account of the DISTRIBUTOR, in accordance with TASTY policy." *Id.* § 10.5. The same section required DI to "reimburse TASTY for all costs and expenses incurred by TASTY in the operation of the Distribution Rights." *Id.* DI had the right to request a meeting with Tasty's Vice President of Sales within five days of the notice of termination to attempt to resolve whatever

situation had led to the termination. *Id.* § 10.5.1. If Tasty decided to uphold the termination, the distributor was required to sell their distribution rights "within a reasonable period of time." *Id.* § 10.5.2. Tasty had "the right, but not the obligation," to sell the rights itself if the distributor did not do so in a reasonable time. *Id.* § 10.5.3.

2. Termination of the Agreement

On July 15, 2021, July 22, 2021, and September 23, 2021, Tasty sent Mr. DiStefano letters to inform him that DI was in breach of the Agreement. *See* ECF 70-16; ECF 70-17; ECF 70-23. Each letter referred to a distinct curable breach, and provided ten business days for DI to cure the breach. The July 15, 2021, letter referred to several failures to provide proper service as defined in section 3.1 of the Agreement by leaving overcode products on the shelves at four retailers. ECF 70-16; *see also* ECF 67-9 ¶ 3 ("On July 15, 2021, I found out of code products in a Giant store in DiStefano, Inc.'s territory…"). The July 22, 2021, letter described similar violations at the same four stores. ECF 70-17; *see also* ECF 67-9 ¶ 4 ("[O]n July 22, 2021, I again found out of code products on the shelves of stores in DiStefano Inc.'s territory …"). The second July letter clarified that "any future failure of performance w[ould] likely … result in the termination of the agreement." ECF 70-17. The final letter, dated September 23, 2021, informed DI that it was again in breach of the agreement because Royal Farms (a retailer with several stores on DI's route) had banned DI from servicing its stores altogether due to repeated service issues. ECF 70-23; *see also* ECF 67-9 ¶ 5 ("[O]n September 22, 2021, I learned that Royal Farms was no longer permitting [Plaintiffs] to serve any Royal Farms stores due to DiStefano, Inc.'s poor service issues."). Tasty again clarified that "any future failure of performance w[ould] likely … result in the termination of the agreement." ECF 70-23.

Plaintiffs acknowledge having received each of these letters within a three-month period. ECF 70-4 at 123:19–21, 124:1–5. Although Plaintiffs take care to provide context surrounding those alleged breaches, including that DI had issues with its truck, ECF 70-15 ¶ 12, and the accusation that DI was being "targeted" by disproportionate inspections of stores on DI's route, Plaintiffs do not provide any facts disputing that the breaches happened. ECF 70-4 at 110:15–19. Although Mr. DiStefano suggested that Tasty was "on a mission: to "blackball" him, he also noted that he had no evidence that Tasty's allegations were incorrect. ECF 70-4 at 108:6–9; *see also id.* at 111:20–21, 112:1–2.[2] And even though he disputed the accuracy of the numbers of overcode products mentioned in Tasty's letters, when pressed on why he believed that Tasty's numbers were inaccurate, he again suggested that Tasty would not have discovered the overcode products but for "be[ing] on a mission" "to jeopardize" Plaintiffs' business. *Id.* at 108:10–21, 109:1–7. Mr. DiStefano admitted that DI "was not meeting" Royal Farms's service requirements prior to the final breach, although he noted that the failures were "due to a truck breakdown." *Id.* at 123:9–18.

Shortly after Tasty sent DI the last of the three letters, on September 28, 2021, Tasty's Area Sales Director discovered more out-of-code baked goods at a retailer in DI's territory. ECF 70-24; ECF 67-9 ¶ 6. Plaintiff did not deny that the goods were expired, but rather explained that the 24 products Tasty had alleged were overcode were all contained in one box. ECF 67-2 at 130:21–131:21. DiStefano again noted that he suspected some sort of targeting of his company by the inspectors. *Id.*

---

[2] Plaintiffs' sole evidence of targeting is Mr. DiStefano's recollection that on December 17, 2020, a senior Tasty executive had telephoned him and said "I'm gonna get you like I got [a former distributor]." ECF 70-15 ¶ 10.

On September 29, 2021, Tasty notified Plaintiffs that the Distributor Agreement assumed on June 18, 2017, would terminate on October 1, 2021. ECF 70-24. The letter noted that DI's repeated issues constituted a "chronic failure of performance." *Id.* Counsel for DI notified Tasty of DI's intention to oppose the cancellation and demanded Tasty cease and desist from terminating the agreement on October 13, 2021. ECF 70-25. The letter alleged that Tasty's conduct violated the Maryland Fair Distributorship Act, Md. Code § 11-1302. *Id.* Tasty rejoined that its decision to terminate the Agreement comported with both the MFDA and the terms of the Agreement itself. ECF 70-26. Following the termination, Tasty operated DI's route. ECF 70-15 ¶ 15.

Plaintiffs filed this lawsuit on June 6, 2022. *See* ECF 1. Plaintiffs filed an Amended Complaint on April 4, 2024, which includes two counts: Breach of Contract and Violation of the Maryland Fair Distributorship Act. *See* ECF 61. Tasty now seeks summary judgment. ECF 67.

## II. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must

be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348–49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Where, as here, the movant seeks summary judgment on an affirmative defense like the statute of limitations, "it must conclusively establish all essential elements of [the] defense." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc*., 673 F.3d 294, 299 (4th Cir.2012) (citing *Celotex*, 477 U.S. at 331).

### III. ANALYSIS

The Amended Complaint (ECF 61) consists of two claims: a claim under the Maryland Fair Distributorship Act ("MFDA") and a breach of contract claim. Tasty seeks summary judgment on both claims. ECF 67. Each is addressed below.

### A. MFDA

Plaintiffs' MFDA claim must fail because the business relationship between DI and Tasty fell plainly outside of the scope of the statute. The MFDA expressly "does not apply to … a franchisor regulated under the Maryland Franchise Registration and Disclosure Law." Md. Code Ann. Com. Law § 11-1302(b)(2). Tasty is subject to regulation under that law, as evidenced by Plaintiffs' own exhibit, a consent order dated October 4, 2019. ECF 70-2 ¶ 2 (noting that the Maryland Securities Commissioner concluded that Tasty had violated the Maryland Franchise Registration and Disclosure Law "in relation to offers and sales of Tasty franchises in Maryland"). The consent order notes that, "Tasty offers and sells franchises in the form of distributorships to independent operators who sell and distribute bakery products," *id.* ¶ 3, the exact relationship between Tasty and Plaintiffs here.

Plaintiffs contend that Tasty was not a regulated franchisor at the time Plaintiffs acquired the second Tasty franchise in 2017, and thus that the MFDA should apply. However, Plaintiffs did not acquire that franchise from Tasty, but purchased it from a previous owner that had purchased the rights directly from Tasty in 2009. ECF 70-2 ¶ 4. Plaintiffs were surely aware that they were acquiring a franchise in 2017, as they were provided with, and Mr. DiStefano signed, a Franchise Disclosure Document. *See* ECF 67-2 at 67–69 (Ex. 6). Moreover, DI bought its first franchise from Tasty in 2004, when Tasty was also registered as a franchise, and there is no way to divide the two franchises that formed DI's total route. ECF 70-2 ¶ 4. The consent order Plaintiffs cite also makes clear that, even though Tasty's registration lapsed from 2016–2018, Tasty was certainly still regulated by the MFRDL during that time—so much so that Tasty was found in violation by the Securities Commissioner of Maryland. *Id.* ¶ 16.

8

Because the MFDA does not apply to Tasty as a regulated franchisor, summary judgment is appropriate on this claim.

### B. Breach of Contract

Plaintiffs' breach of contract claim falls too, because they have not adduced facts sufficient to support their contention that Tasty breached the Agreement. Plaintiffs have alleged that Tasty violated the Agreement by breaching its implied duty of good faith both in terminating the agreement and operating DI's former route after termination.

To prevail on a Pennsylvania law[3] breach of contract claim, a plaintiff must establish that a contract existed, the defendant breached that contract, and the plaintiff suffered damages from that breach. *McShae v. Philadelphia*, 995 A.2d 334, 340 (Pa. 2010). Pennsylvania courts recognize a very limited duty of good faith and fair dealing "applicable only in the context of an attempt on the part of the franchisor to terminate its relationship with the franchisee." *Witmer v. Exxon Copr.*, 434 A.2d 1222, 1227 (Pa. 1981). No court interpreting Pennsylvania law has ever extended a duty of good faith and fair dealing to any other part of the franchise relationship. *AAMCO Transmissions, Inc. v. Wirth*, 2011 WL 6088671, *11 (E.D. Pa. Dec. 7, 2011). There is no duty "not to act arbitrarily when terminating a franchise," but franchisors must act "in good faith

---

[3] The parties disagree about whether Plaintiffs' breach of contract claim should be evaluated under Pennsylvania or Maryland law. *See* ECF 70 at 21; ECF 74 at 3–4. Tasty initially applied Maryland law. *See* ECF 67-1 at 15. Plaintiffs argued that Pennsylvania law applies because of the choice-of-law provision of the Agreement. ECF 70 at 21 (citing 70-5 § 15.4). Tasty rightly noted in its reply memorandum that the Court need not resolve the choice-of-law question here if the outcome would be the same under either Pennsylvania or Maryland law. ECF 74 at 3 (citing *Progressive Septic Inc. v. SeptiTech, LLC*, 2011 WL 939022, at *12 (D. Md. Mar. 15, 2011)). Tasty then proceeded to respond to Plaintiffs' Pennsylvania law arguments, and explained that the relevant provisions of Pennsylvania and Maryland law are identical. *Id.* at 4. Because the Court agrees that the result would be the same under either Pennsylvania or Maryland law, and both parties have provided arguments under Pennsylvania law, the Court will cite to Pennsylvania law.

and … with commercial reasonableness." *Loos & Dilworth v. Quaker State Oil Ref. Corp.*, 500 A.2d. 1155, 1158 (Pa. Super. Ct. 1985). Even where a duty of good faith and fair dealing applies, "it is well established that a covenant of good faith cannot modify or override the express terms of a contract." *AAMCO Transmissions*, 2011 WL 6088671, at *12.

As to the termination, Plaintiffs must adduce facts creating a genuine issue as to whether Tasty breached the terms of the Agreement or failed to act in good faith. As to post-termination conduct, Plaintiffs may only prevail if they can cite facts creating such an issue as to whether Tasty breached the Agreement.

1. Termination

The Agreement gave Tasty broad latitude to terminate it. Plaintiffs are bound to the terms of the contract to which they agreed, and Tasty did not violate any of those terms. The Agreement allowed Tasty to terminate the Agreement for a "non-curable breach" with only 24 hours written notice if "the failure of performance by DISTRIBUTOR … threatens substantial harm to TASTY's business." And it defined "more than two (2) [curable breach notices] in a period of twelve (12) consecutive months" as "substantial harm to TASTY's business." ECF 70-5 §§ 10.2, 10.4. It is undisputed that DI received *three* breach notices within a period of only three months. Plaintiffs admit to having no evidence those breach notices were incorrect, or that the breaches described therein did not occur. *See, e.g.*, ECF 70-4 at 108:6–9. When asked why he believed the breach notices were inaccurate, moreover, Mr. DiStefano did not dispute that the products were overcode, but rather suggested DI had been unfairly targeted with frequent inspections.

Plaintiffs also insist that Tasty violated the Agreement by failing to assist DI when its truck broke down, or to advocate for DI to disgruntled retailers on DI's route. ECF 70 at 22–23. But the Agreement did not create any obligation for Tasty to assist DI in delivering goods, and certainly

none to intercede on DI's behalf when it failed to meet retailers' service requirements. Barring bad faith, Tasty's termination of the agreement falls squarely within the parties' agreed terms.

Plaintiffs' allegations of bad faith surrounding the termination are also unavailing. Plaintiffs have not adduced any evidence that the contents of the breach letters were false or incorrect. Indeed, Plaintiffs have not denied that DI breached the Agreement by leaving overcode products in stores, but rather provided excuses for those breaches and accused Tasty of unfair targeting. The Agreement expressly provided that failure to remove overcode products from stores constituted a material breach. ECF 70-5 §§ 3.6, 2.4. The Agreement stated in no uncertain terms that three curable breach notices would be grounds for termination. *Id.* § 10.4. Plaintiffs cannot argue that it was commercially unreasonable for Tasty to terminate DI's Distribution Agreement after three consecutive material breaches, including a store refusing continued service by DI.[4] Nor is there any evidence beyond mere speculation that DI was singled out or targeted by Tasty's inspectors. But even if there was, there is no real dispute that the violations happened, and the Agreement provides no guarantee against motivated inspectors.

Plaintiffs have created no genuine issue of material fact about whether Tasty acted in good faith in terminating the Agreement, or whether that termination was commercially reasonable.

2. Post-Termination

With respect to the alleged breach of contract after termination, the language of the Agreement does not create the rights and obligations that Plaintiffs now seek to enforce. The Agreement provides only that, after termination, Tasty would "use reasonable efforts, recognizing

---

[4] Plaintiffs' argument that Royal Farms did not identify DI by name as their servicer is unpersuasive. Royal Farms said they did not want continued service from their existing servicer, which was DI.

11

the limited personnel TASTY has for such purpose, to operate the Distribution Rights … in accordance with TASTY policy." *Id.* § 10.5. It also provided that the *distributor* (here, DI) would reimburse Tasty for costs and expenses incurred in running the route. *Id.* The sole obligation of Tasty after termination was to use reasonable efforts to operate the route in accordance with its own policies. Plaintiffs, in turn, were obligated to reimburse Tasty's expenses.

Plaintiffs have not adduced any fact that creates a genuine dispute as to whether Tasty "use[d] reasonable efforts" in operating DI's former route after termination.[5] Even if Plaintiffs are right that Tasty operated the line imperfectly, or even that Tasty had the same shortcomings that DI had, the terms of the Agreement only required Tasty to "use reasonable efforts" to temporarily operate the route.

And Tasty was not required to charge only reasonable expenses; indeed, the Agreement provided that DI was obligated to reimburse *all* costs and expenses, not just fair or reasonable ones. It is inapposite whether Tasty's reimbursement requests were exorbitant. The contract relatedly does not impose on Tasty any obligation to remit profits. The language of the contract simply does not support Plaintiffs' breach of contract theory.

Because there is no genuine issue of material fact as to whether Tasty breached the Agreement either during or after termination, summary judgment is also appropriate on this count.

---

[5] Plaintiffs' assertions regarding Tasty's post-termination shortcomings, ECF 70 at 24, are notably devoid of any citation to the record.

## IV. CONCLUSION

For the reasons stated above, Tasty's Motion for Summary Judgment, ECF 67, is GRANTED. A separate Order follows.


Dated: August 26, 2024                              /s/
                                            Stephanie A. Gallagher
                                            United States District Judge